PASCAL SAMUELL

*v.* 

THE TOWN OF SHERMAN.

*Opinion filed November 8, 1897—Rehearing denied December 9, 1897.*

1. PARTIES—*right of party to maintain an action in name of town to enforce penalty for obstructing highway.* One who, under section 74 of the Road and Bridge act, seeks to enforce before a justice a penalty against another for obstructing a highway, the highway commissioners having failed to act seasonably, and who has given the required bond for costs, is entitled, on appeal to the circuit court, to have the town substituted in his place as plaintiff.

2. PRACTICE—*when highway commissioners cannot dismiss suit to enforce penalty for obstructing road.* Where, on appeal to the circuit court from an action brought before a justice by one party to enforce against another a penalty for obstructing a highway, the highway commissioners having failed to act seasonably, the town is substituted as plaintiff, the commissioners cannot have the suit dismissed without the consent of the complaining party.

WRIT OF ERROR to the Circuit Court of Mason county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

This was a suit originally commenced before a justice of the peace by George Athey, for and on behalf of the town of Sherman, against Pascal Samuell, under section 74 of the Road and Bridge act, to recover a fine, under the provisions of section 71 of the same act, for maintaining an alleged obstruction in a public highway in said town. The highway commissioners of the town, though complaint had been repeatedly made to them by Athey, refused to take any action in the matter, claiming that the alleged obstruction was not in the public highway.

However, they finally made an agreement in writing with Athey, setting forth that they were reluctant to give said notice for the reason that it would lay them liable to prosecute said case further, and that Athey thereby agreed that in consideration of the giving of the desired notice by the highway commissioners, he, Athey, would make no further complaints to them about the obstructions. The following is a copy of the notice served on Samuell:

"You are hereby notified that there are obstructions in the public road across the land of which you are the owner, at the south-east corner of the angle where the road coming from the north at the residence of George W. Athey, near the south-west corner of the town of Easton, Illinois, turns west, immediately in front of said residence, and extending from said angle north-west toward the Illinois Central railroad. You are hereby notified that said road is sixty-six feet wide, and runs in a straight line from said railroad squarely up to the yard fence of the said residence of George W. Athey. And you are hereby notified to remove from the said road all obstructions, and especially those near said residence, and consisting of buildings, fences, wagons, vehicles, farm implements and machinery, header barges, hay frames and rubbish, trash, etc., and unless you remove such obstructions from said road within ten days from the date of service of this notice, you will be proceeded against according to law."

A trial was had before the justice, and he rendered judgment for defendant. On appeal to the circuit court of Mason county a trial was had, and the jury found defendant guilty and assessed the penalty at $35 and costs.

Before the trial in the circuit court, on motion of Athey, the town of Sherman was substituted as plaintiff. The highway commissioners then entered a motion to dismiss the suit, which motion was overruled by the court.

I. R. BROWN, for plaintiff in error.

DEPUE & NORTRUP, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Two questions are first raised in this case by plaintiff in error, having reference to the procedure in the court below. One is, that the circuit court erred in sustaining the motion to substitute the town of Sherman as plaintiff in lieu of Athey, in whose name the suit had first been brought, without imposing any terms as a condition to the allowance of the motion, as required by section 24 of the Practice act. The other is, that the court erred in refusing to allow the suit to be dismissed at the motion of the highway commissioners.

Section 74 of the Road and Bridge act provides that "it shall be the duty of the commissioners to seasonably prosecute for all fines and penalties under this act, but in case of failure of said officers to so prosecute, complaint may be made by any person, provided said person shall, before bringing suit in the name of the town, give a bond for costs, as is provided for in cases of non-resident." Athey having given the bond required by this section, there was no error in the rulings of the trial court on these two motions. He had a right to have the suit tried, and the statute fixed the terms on which he could use the name of the town.

The main contention, however, is, that the verdict is contrary to the evidence, and that it is the result of prejudice. The notice served on the plaintiff in error recites that there are obstructions "at the south-east corner of the angle where the road coming from the north at the residence of George W. Athey, near the south-west corner of the town of Easton, Illinois, turns west," and also "that said road is sixty-six feet wide, and runs in a straight line from said railroad squarely up to the yard fence of said residence of George W. Athey." The testimony shows that the obstructions are on the east half of the sixty-six feet claimed as a road in the notice. It is contended by

plaintiff below that this road was originally laid out by the commissioners in 1862, of the width of four rods, or sixty-six feet, and that these obstructions are clearly within the boundaries of the road as laid out. The order laying out the road declares it to be "a public road four rods wide, the line of the said survey being the center of the said road." As far as this portion of the road is concerned, the line of the survey followed the section line between sections 35, 36, 25 and 26. The testimony shows that between sections 25 and 26 there was in 1862, and still is, a hedge fence, which fence was, prior to a re-survey made in 1870, supposed to be on the section line, but by said re-survey the line was shown to be about three rods west of the hedge fence. But the road as laid out by the commissioners lay for only two rods in width east of the section line, and these alleged obstructions were not within these two rods, but were located east of their east line, so they could not possibly be in the road as laid out, whether the old section line as indicated by the hedge was taken as the center of the road, or the new section line as established by the re-survey of 1870.

It is one of the contentions of plaintiff in error that this road as laid out was never opened as required by the statute; that the hedge fence has always remained in the middle of the road, and that because of such failure to open there was not, by virtue of the laying out of such road by the commissioners, any public road to be obstructed. However this may be, it is plain from the evidence that the section line was the center of this part of the road as laid out, but there was never any travel on the west side of the hedge fence, so that by virtue of the proceedings laying out the road there could not have been more than two rods in width of the road east of the hedge fence, and regarding the section line, as established by the re-survey, as lying three rods west of the hedge fence, the whole of the road as laid out was, so far as the record was concerned, established west of the hedge

fence, so that whether the road was in fact opened or not, the obstructions complained of were not in any part of the road as laid out.

But it is contended by defendant in error that the highway must be regarded as having been laid out and established for its full width of sixty-six feet on the east side of the hedge fence, and in this connection it is contended that it was so used and traveled by the public since then, until part of the same was closed up where it ran around the five-acre tract, and until plaintiff in error obstructed that part of the road now in controversy, and that the road may be regarded as a public highway by dedication or prescription. But we fail to find in the record any sufficient evidence of any dedication to or acceptance by the public, or of any prescriptive use by the public of that part of the alleged road occupied by the obstructions complained of. If the strip of land encumbered by the obstructions was a part of the public highway as laid out, dedicated or continuously used by the public, so also was the land occupied by Athey's house, which was located just south of the obstructions in question and directly within what would be the public highway according to the contentions of defendant in error. It is true, of course, that as to that part of the alleged original road now occupied by Athey's house and obstructed by fences enclosing the same no question is made in this case. But the closing up of that part of the road has, we think, some bearing upon the question as to whether or not there was a public road at the place alleged to have been obstructed, by dedication or prescription. It does not appear from the evidence that that part of the alleged road obstructed was ever used by the public.

It seems to be contended, also, by defendant in error, that because J. M. Samuell, a former owner, laid out the village of Easton in the south-west quarter of section 25 and north of that part of the alleged highway obstructed, and platted and dedicated a street of said village sixty-

six feet wide on the west side of the village, and which street was located directly upon this alleged highway, having for its western boundary the said hedge fence, that thereby the alleged highway sixty-six feet wide and located immediately east of the hedge fence was recognized, and the land was thereby dedicated to the public use as a highway. But we are unable to see how the platting of a street upon that part of the alleged highway could operate as a dedication of another part of the same strip of land if extended south, lying several rods south of the end of the street and of the village limits.

Nor are we able to find in the record any evidence from which an estoppel could arise against plaintiff in error. That part of the road which seems to have run through the piece of land now occupied by Athey belonged to Samuell when the road was laid out, and it seems to have been closed up in 1873 by the land owners, and the road changed, and made to turn to the west just south of the section line. This action seems to have been acquiesced in by the public, and there is no evidence that this part of the road was vacated by the public authorities. Samuell did not sell off the land occupied by Athey's house until after the change had been made, and we do not find in the record any evidence that in selling the land he made any representations that that part of the alleged public highway north of the Athey piece, and where the alleged obstructions now are, was a part of the public highway, so as to give rise to an estoppel. The line of travel was always west of the alleged obstructions, and obstructions, in some form, have been on the strip in question, or a part of it, since 1874, when a fence was placed there by Samuell.

We are unable to find in the record any sufficient evidence to authorize the jury to find that the said alleged obstructions were in the public highway. The judgment is reversed and the cause remanded.

*Reversed and remanded.*